UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CASSANDRA ROSEANNE HART,
on behalf of D.K.H., an infant,

                         Plaintiff,

                -vs-                                          12-CV-1043-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                         Defendant.

---

APPEARANCES:        JAYA ANN SHURTLIFF, ESQ.
                                 Law Offices of Kenneth Hiller
                                 Amherst, New York
                                 Attorneys for Plaintiff

                                 WILLIAM J. HOCHUL, JR.
                                 United States Attorney, Western District of New York
                                 (GAIL Y. MITCHELL, AUSA, of Counsel)
                                 United States Attorney's Office
                                 Buffalo, New York
                                 Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated November 14, 2013 (Item 15).

Plaintiff Cassandra R. Hart initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social

---

[1] At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C. § 405(g). On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure. For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits made on behalf of her minor child, D.K.H. The Commissioner has moved, and plaintiff has cross-moved, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

## **BACKGROUND**

Plaintiff filed an application on March 4, 2009, for SSI benefits on behalf of D.K.H. (Tr. 114-16, 125). D.K.H. was born on December 9, 2003, and was 5 years old at the time the application was filed (Tr. 114). Plaintiff alleged that D.K.H. was disabled since birth due to attention deficit hyperactive disorder ("ADHD"), hearing loss, asthma, and anger management problems (Tr. 129). Upon denial of the application at the initial level of agency review (Tr. 47-51), plaintiff requested a hearing which was held on December 7, 2010, before Administrative Law Judge ("ALJ") William E. Straub (Tr. 26-46). Plaintiff and D.K.H. testified at the hearing, and they were represented by attorney Melissa Pezzino, Esq.

In a decision dated January 4, 2011, ALJ Straub found that D.K.H. was not disabled within the meaning of the Social Security Act (Tr. 7-21). Following the sequential evaluation process for determining disability for children, as outlined in the Social Security regulations at 20 C.F.R. § 416.924, the ALJ determined that D.K.H.'s impairments, while severe, did not meet, medically equal, or functionally equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), necessary for a finding of eligibility for child's SSI benefits (*id.*).

Plaintiff filed a timely administrative appeal (Tr. 107-12), and on August 29, 2012, the ALJ's decision became the final determination of the Commissioner when the Appeals Council denied plaintiff's request for review (Tr. 1-3). Plaintiff then filed this action on October 29, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and the parties now move for judgment on the pleadings under Fed. R. Civ. P. 12(c).

In support of her motion, plaintiff contends that the ALJ failed to properly consider teacher evaluations and other non-medical evidence regarding the severity of D.K.H.'s impairments and their combined effect on his functioning in the six functional equivalence domains outlined at 20 C.F.R. § 416.926a; failed to fully develop the record by obtaining a medical opinion from D.K.H.'s treating physician; and failed to properly assess the credibility of plaintiff's and D.K.H.'s hearing testimony (*see* Item 10). The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed (*see* Items 5, 15).

## DISCUSSION

I.  **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *See Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v.*

*Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.     Standards for Determining Eligibility for Child's Disability Benefits

Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations set forth a sequential process for the ALJ to follow in evaluating SSI claims for minor children. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the child has engaged in substantial gainful activity. If so, the child is ineligible for SSI benefits. 20 C.F.R. § 416.924(b). If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c). If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

If the ALJ determines that the child's impairment or combination of impairments does not meet or equal any listing, the ALJ must then assess whether the child's impairment(s) "functionally equal the listings" by considering how the child functions in terms of the following six "domains:"

(i) Acquiring and Using Information;

      (ii) Attending and Completing Tasks;

      (iii) Interacting and Relating with Others;

      (iv) Moving about and Manipulating Objects;

      (v) Caring for Oneself; and

      (vi) Health and Physical Well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); *see Ramos v. Barnhart*, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

      In this case, the ALJ determined at step one of the sequential evaluation that D.K.H. had not engaged in substantial gainful activity at any time during the relevant period (Tr. 13). At step two, the ALJ reviewed the medical records and found that D.K.H. suffers from "severe" ADHD, hearing loss, asthma, and anger management problems (*id.*; citing 20 C.F.R. § 416.924(c)). The ALJ then found at step three that D.K.H. did not have an impairment or combination of impairments that met or medically equaled any impairment in the Listings (*id.*). As required by the regulations, the ALJ then evaluated D.K.H.'s limitations in terms of the six functional equivalence domains to determine whether they were functionally equivalent to any listed impairment, considering "all of the relevant evidence in the case record" including the objective medical evidence; other evidence from

medical sources; information from other sources, including teachers and family members; and statements from the claimant and his mother (Tr. 13-20). Specifically, the ALJ found that D.K.H. had no limitation in the domains of "Acquiring and Using Information," "Moving About and Manipulating Objects," and "Health and Physical Well-being;" less than marked limitation in the domains of "Attending and Completing Tasks" and "Interacting and Relating with Others;" and marked limitation in the domain of "Caring for Oneself" (*id.*). Consequently, the ALJ found that D.K.H. was not disabled during the period at issue from March 26, 2009, the date his SSI application was filed[2] to January 4, 2011, the date of the ALJ's decision,[3] and was therefore not entitled to child's SSI benefits (Tr. 6).

Plaintiff contends that, in making this determination, the ALJ committed the following errors:

1. The ALJ failed to properly consider "other source" evidence provided by D.K.H.'s teachers regarding the severity of D.K.H.'s impairments and their combined effect on his functioning in the six functional equivalence domains;

2. The ALJ failed to fully develop the record by obtaining a medical opinion from D.K.H.'s treating physician;

3. The ALJ failed to properly assess the credibility of plaintiff and D.K.H. with regard to their testimony at the administrative hearing.

Each of these contentions is now addressed in turn.

---

[2] SSI benefits cannot be paid any earlier than the month after the month in which the application is filed. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

[3] An application remains in effect until the hearing decision is issued. 20 C.F.R. § 416.330.

### III. "Other Source" Evidence

Social Security Ruling ("SSR") 06-03p provides that, in evaluating "all relevant evidence in a case record," the ALJ must consider not only opinion evidence from "acceptable medical sources," but also evidence provided by " 'non-medical sources' including … [e]ducation personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers …." SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Although information from these "other sources" cannot be relied upon to establish a medical impairment, this information "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

The ruling directs the ALJ to use the same factors in evaluating the opinions of "other sources" as are used to evaluate the opinions of "acceptable medical sources," including such factors as:

> [T]he nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *5. As explained further in the ruling:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6. Under this guidance, "[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' … are entitled to no weight or little weight, those decisions

should be explained." *Sears v. Astrue*, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012); *see also Colon v. Astrue*, 2013 WL 2245457, at *10 (W.D.N.Y. May 21, 2013) (finding abuse of discretion for ALJ to "entirely ignore" vocational rehabilitation counselor's assessment of claimant's RFC).

In this case, the ALJ expressly relied on a Teacher Questionnaire dated April 20, 2009, completed by Ms. May, D.K.H.'s pre-K teacher at the Henry J. Kalfas School during school year 2008-09 (Tr. 137-45), in finding that D.K.H. has marked limitation in the domain of "Caring for Oneself" (Tr. 19). Plaintiff contends that there is additional information in this report, as well in a report completed in November 2010 by D.K.H.'s first grade teacher, Ms. Durkin (Tr. 180-87), which provides substantial evidence to support a finding of marked limitation in the domains of "Attending and Completing Tasks" and "Interacting and Relating with Others" (either one of which would have resulted in a finding of functional equivalence), and that the ALJ erred by failing to properly explain his reasons for finding less than marked limitation in each of these domains.

This contention must be rejected. As the Second Circuit has recently reiterated, "whether there is substantial evidence supporting the [claimant]'s view is not the question" for the court on judicial review of the Commissioner's determination; "rather, [the court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x. 58, 59 (2d Cir. 2013). Under this "very deferential standard of review," *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012), even where the record contains substantial evidence weighing against the Commissioner's findings, the

court will not disturb the determination so long as substantial evidence also supports it. *See Marquez*, 2013 WL 5568718, at *7.

The court's review of the record in this case reveals that the information in the reports completed by Ms. May and Ms. Durkin is not patently inconsistent with the ALJ's finding of a less than marked limitation of functioning in the domains of "Attending and Completing Tasks" and "Interacting and Relating with Others." For example, Ms. May indicated in her April 2009 report that D.K.H. had "no problem" or "slight" problems functioning in eleven of the thirteen activities associated with the domain of "Attending and Completing Tasks" (*see* Tr. 140). She commented that D.K.H.'s behavior improved dramatically upon seeking medical attention, obtaining a prescription, and taking the medications (*see* Tr. 145, 149, 308-15). Ms. Durkin indicated in her November 2010 report that D.K.H. had a "serious" problem in four of the thirteen activities associated with the domain of "Attending and Completing Tasks," and assessed only "slight" problems with five activities in the domain (*see* Tr. 182). Ms. Durkin also noted that D.K.H. was able to complete activities and focus for longer periods after taking the medication prescribed for treatment of his ADHD, but that he did not take his medication on a regular basis (Tr. 186).

The ALJ referred to both of these reports in connection with his finding of less than marked limitations in this domain, specifically noting the teachers' indication that D.K.H. demonstrated "no problems" or "only … slight or obvious" problems in the majority of areas of functioning, and that his compliance with prescribed medication had resulted in "great social/emotional progress" (Tr. 16). This finding is further supported by the assessment of State agency review physician Dr. C. Nohejl, dated June 12, 2009, noting the pre-K teacher's report that D.K.H. had "improved remarkably with medication," and concluding

-11-

that D.K.H. had a less than marked limitation in this domain (Tr. 253). *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (appropriate for ALJ to consider report of State agency medical consultant as expert opinion evidence on whether claimant's impairments met or equaled listed impairment; citing 20 C.F.R. § 416.927(e)(2)(i) (State agency medical consultants "are highly qualified … specialists who are also experts in Social Security disability evaluation" and ALJ must consider their findings as opinion evidence)).

With regard to the domain of "Interacting and Relating with Others," Ms. May indicated that D.K.H. had either "no problem" or "a slight problem" in seven of the thirteen activities listed; "an obvious problem" in five of the activities; and "a very serious problem" with expressing anger appropriately (Tr. 141). Ms. Durkin noted that D.K.H. had "very serious" problems functioning in nine of the thirteen activities listed (Tr. 183). The ALJ properly credited the report of Ms. May, once again noting her assessment "that when on medication there was an enormous change in behavior" (Tr. 17). Significantly, Ms. May's questionnaire was completed in April 2009, and her journal continued through June 17, 2009, encompassing her observations of D.K.H.'s behavior as his pre-K teacher over the course of an entire school year (see Tr. 138, 145, 315). By contrast, Ms. Durkin's assessment was made in November 2010, after less than two months of teaching D.K.H. in the first grade (Tr. 180, 187).

The ALJ's finding of less than marked limitation in the domain of "Interacting and Relating with Others," reflecting the State agency review physician's identical assessment (Tr. 253), is further supported by treatment records from Monsignor Carr Mental Health Services indicating that D.K.H.'s behavior improved significantly following his initial

psychiatric evaluation in February 2009 by Dr. Paul Fazekas, Ph.D., Licensed Clinical Psychologist/Psychiatric Nurse Practitioner at Monsignor Carr, who prescribed Adderall (Tr. 224-31), and the report of a consultive pediatric examination performed by Dr. Samuel Balderman on June 10, 2009, which revealed that D.K.H.'s behavior and attention span were only "slightly below age level" (Tr. 246).

Based on this review, the court finds that the ALJ's discussion of the evidence in the record substantially complies with the directives of the Social Security regulations and rulings in a manner that allows subsequent reviewers to follow his reasoning, and that—notwithstanding substantial evidence in the record weighing against the ALJ's findings—there is substantial evidence to support the conclusion that D.K.H. had neither marked nor extreme limitations in either of these domains.

## IV.   Duty to Develop the Record

Plaintiff also contends that the ALJ erred by failing to recontact Dr. Fazekas to obtain a medical opinion regarding functional limitations. In this regard, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel … ." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted). This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …," as well as "advising the plaintiff of the importance of such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y.

2004). On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

According to plaintiff, despite his course of treatment with Dr. Fazekas at Monsignor Carr, the record contains no assessment or opinion from Dr. Fazekas regarding D.K.H.'s functional limitations in the activities associated with the six domains. Indeed, the only medical opinion of D.K.H.'s functional limitations in the record is the assessment of Dr. Nohejl, the State agency review physician.

However, the record reflects that the evidence presented to, and considered by, the ALJ included D.K.H.'s treatment records from Dr. Fazekas and other medical personnel at the Monsignor Carr Institute (*see* Tr. 224-31, 266-73). In addition, plaintiff and her counsel were given specific written permission to submit any additional relevant evidence prior to the hearing (Tr. 63-67, 81-85), and counsel did submit additional treatment records from the Monsignor Carr Institute (Tr. 328-29), along with additional educational evidence (Tr. 179, 275), pediatric records (Tr. 325), hospital records (Tr. 318), and a pre-hearing memorandum (Tr. 104-06).

The court's review of this evidence, as well other evidence in the record available to the ALJ at the time his determination was made, reveals substantial support for the ALJ's finding that D.K.H.'s impairment, when adequately managed by compliance with his prescribed medication, did not functionally equal the severity of a listed impairment. For example, the records from Monsignor Carr reflect that Dr. Fazekas prescribed Adderall in

February 2009 to treat ADHD (5 mg daily; increased incrementally to 20 mg daily by July 2010) (*see* Tr. 227-28, 329), and D.K.H. received psychiatric counseling at Monsignor Carr one to three times per month, primarily from Nicole McAuliffe, L.M.S.W. (Tr. 224, 267-69, 329). Ms. McAuliffe noted on March 10, 2009 that, since he began Adderall in February, D.K.H.'s school had reported a significant improvement in his behavior and his ability to focus and pay attention, and a Global Assessment of Functioning (GAF)[4] score of 55 was assessed, indicating only moderate symptoms (Tr. 224). On July 21, 2010, Ms. McAuliffe noted that D.K.H. continued to receive counseling, continued on Adderall, and continued to maintain a GAF score of 55 (Tr. 329).

There is substantial evidence in the record from other medical sources to provide a basis for the ALJ's findings. For example, on April 13, 2009, D.K.H. was treated at Niagara Falls Medical Center for a laceration to his ear. He was noted by hospital staff to be well-appearing, happy, very pleasant, and cooperative, and he had normal affect, insight, memory, and concentration (Tr. 237-38). In addition, as noted above, Dr. Balderman's June 10, 2009 consultative examination revealed that D.K.H.'s attention span and behavior were only slightly below age level (Tr. 246), and the State agency review physician concluded that the medical and other evidence of record revealed no marked limitation in any domain of functioning (Tr. 253-54).

Based on this review and analysis, the court finds that the medical evidence in the record was adequately developed as a basis for the ALJ's determination that D.K.H.'s

---

[4]GAF is a rating of overall psychological functioning on a scale of 0 to 100. A rating of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision, 2000).

limitations in terms of the six listed domains were not functionally equivalent to any listed impairment, and that the ALJ did not commit legal error by failing to contact Dr. Fazekas, or any other treating source, to seek further medical information in advance of this determination.

## V.   Credibility

Finally, plaintiff contends that the ALJ failed to properly assess credibility with respect to the hearing testimony regarding D.K.H.'s functional limitations. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Commissioner's policy interpretation ruling on this process states that:

The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and

articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).[5]

Noting these factors in his decision in this case (see Tr. 14), ALJ Straub gave credit to the witnesses' hearing testimony indicating that D.K.H. attended first grade in a regular classroom setting; was able to get along with teachers and peers; enjoyed games, sports, and riding his bike; and benefitted from compliance with prescribed medications (*id.*). This assessment is set forth in the decision with sufficient clarity for the court to determine the weight given to the witnesses' statements about D.K.H.'s functional limitations and, as indicated by the discussion above, is supported by substantial evidence in the administrative record.

Accordingly, the court finds that the ALJ's evaluation of the witnesses' credibility did not result in legal error which would require reversal of the Commissioner's determination or remand for further proceedings.

---

[5] The Ruling notes that, while the discussion regarding the process for assessing credibility refers only to SSDI claims under title II and SSI claims under title XVI by individuals 18 years or older, "the same basic principles with regard to determining whether statements about symptoms are credible also apply to claims of individuals under age 18 claiming disability benefits under title XVI." SSR 96-7p, 1996 WL 374186, at *1 n.1.

**<u>CONCLUSION</u>**

Based on the foregoing analysis, the court concludes that the Commissioner's determination is free of legal error and supported by substantial evidence in the record, and must be upheld. Accordingly, the Commissioner's motion for judgment on the pleadings (Item 5) is granted, plaintiff's cross-motion (Item 10) is denied, and the complaint is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:  March 10, 2014
p:\pending\2013\12-1043.ssa.feb20.2014